UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**NEVADA JEROME**,

                Plaintiff,

v.                                         **Case No. 16-cv-612-pp**

**PATRICK MURPHY, MD, and
JOHN AND JANE DOES,**

                Defendants.

---

**DECISION AND ORDER DENYING AS MOOT THE PLAINTIFF'S
MOTION FOR LEAVE TO PROCEED WITHOUT
PREPAYMENT OF THE FILING FEE (DKT. NO. 3),
DENYING HIS MOTION TO APPOINT COUNSEL (DKT. NO. 5), AND
SCREENING HIS COMPLAINT**

---

The plaintiff, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights while the plaintiff was incarcerated at the Oshkosh Correctional Institution. The case is before the court on the plaintiff's motion for leave to proceed without prepaying the filing fee (Dkt. No. 3), his motion for the appointment of counsel (Dkt. No. 5), and for screening of his complaint.

**I.  MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 3)**

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets

1

certain conditions. On May 24, 2016, the plaintiff filed a motion for leave to proceed without prepayment of the filing fee (Dkt. No. 3); however, on May 26, 2016, the court concluded that the plaintiff had sufficient funds in his prisoner trust account to pay the full filing fee (Dkt. No. 8). On June 10, 2016, the plaintiff paid the full civil case filing fee of $400. Because the plaintiff has paid the full filing fee, the court denies his motion as moot.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. Erickson v.

3

Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    B.    <u>Facts Alleged in the Complaint</u>

The plaintiff alleges that while he was an inmate at the Oshkosh Correctional Institution ("OCI"), he was coughing up blood; he says this was "reported in March and April of 2014." Dkt. No. 1 at 3. Defendant Murphy ordered an x-ray. Id. On April 30, 2014, the radiology report indicated, "left perihilar focal infiltrate and/or mass. Follow-up chest study is advised." Id. The plaintiff alleges that Murphy did not follow up, instead ignoring the report. Id.

The plaintiff states that between April 30, 2014, and April 8, 2015, he wrote six to eight service requests to the defendants, in which he informed the defendants that he was "bleeding all the time, complaining of breathing problems and coughing up blood and could they do something about it." Id. The plaintiff alleges that Murphy and other unidentified defendants continued to ignore the report. Id.

The plaintiff alleges that finally, on April 16, 2015, Murphy ordered a test, the results of which were "left perihilar focal infiltrate and/or mass grow 5.1 cm." Id. The plaintiff states that a CT scan was performed on April 16, 2015, after which Murphy told the plaintiff that the mass was cancerous and inoperable. Id. Murphy scheduled the plaintiff for a biopsy. Id.

The plaintiff states that Murphy admitted that he had not read the entire April 30, 2014 radiology report. Id. at 4. The plaintiff also describes the "living nightmare" his life has become due to the cancer and the treatment for the

4

cancer—over fifty trips to the hospital, chemo, radiation, sleep deprivation, exhaustion, fearing he'll drown in his own blood. Id. He recounts a rush trip to the hospital on April 29, 2016, which resulted in his remaining hospitalized for some two weeks, and alleges that his condition worsens every day. Id.

The plaintiff sues Murphy and the unidentified Doe defendants in their individual and official capacities. He alleges that Murphy's failure to read the full April 30, 2014 radiology report resulted in his treatment having been delayed for over a year; indeed, he argues that his lung cancer would not have developed at all had Murphy read the full April 30, 2014 report. Id. He seeks "nominal," compensatory and punitive damages, costs, and declaratory relief. Id. at 5.

    C.    <u>Legal Analysis of Alleged Facts</u>

As a threshold matter, the court acknowledges that the plaintiff purports to sue Murphy and the unidentified defendants in both their individual and official capacities. Id. at 3. The distinction between official capacity and individual capacity is significant. "Personal-capacity suits seek to impose liability upon a government official for actions he takes under color of state law. . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting Kentucky v. Graham, 473 U.S.159, 166 (1985)).

In other words, a personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal

5

right.  Id. An official-capacity suit is appropriate only when the defendant is executing or implementing the official policy or custom of a government entity. Id.  The plaintiff's allegations do not indicate or imply the existence of any official policy or custom. Instead, the plaintiff alleges that each defendant acted on his or her own to deprive the plaintiff of his constitutional right to be free from cruel and unusual punishment. The plaintiff has not stated claims against any defendant in his or her official capacity.

Turning to the plaintiff's individual capacity claims under the Eighth Amendment: a plaintiff who seeks to state a claim based on improper medical care must demonstrate two elements: "1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition." Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (citing Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006)).

There is no question that the plaintiff has met the first prong of the above test: lung cancer is an objectively serious medical condition regardless of how far it has progressed, and it appears that the plaintiff's cancer is advanced. At this stage in the proceedings, the court also concludes that the plaintiff has alleged sufficient facts to support his claim that the defendants—in particular, defendant Murphy, the only named defendant at this point—were deliberately indifferent to his condition. The court will allow the plaintiff to proceed on his Eighth Amendment deliberate indifference claim against Murphy and the unidentified defendants, based on his allegations that they ignored the results

6

of the radiology report and ignored his six to eight health service requests over the course of a year.

The court realizes that at this time, the plaintiff does not know the names of the John/Jane Doe defendants. The plaintiff will need to serve discovery requests (see Federal Rules of Civil Procedure 33 and/or 34) on Murphy to help him identify the proper names of the unidentified ("John and Jane Doe") defendants. Once defendant Murphy has answered or otherwise responded to the complaint, the court will issue a scheduling order for conducting discovery. Once the court enters that scheduling order, the plaintiff may, pursuant to Federal Rule of Civil Procedure 33, serve interrogatories regarding the alleged events, and, pursuant to Federal Rule of Civil Procedure 34, ask for any reports or records that the plaintiff believes are relevant to the alleged events.

### III. THE PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL (DKT. NO. 5)

The plaintiff has asked the court to recruit counsel to represent him, without cost to him. Dkt. No. 5. The plaintiff acknowledges that the court has discretion in a civil case to decide whether to recruit a lawyer for someone who cannot afford one. Id. at 1; see also, Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court must decide "whether the difficulty of the case –

7

factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff has satisfied the first step of the Pruitt process: he contacted four law firms and the Milwaukee Bar Association in an effort to hire counsel on his own. Two firms responded that they were unable to help the plaintiff, and the plaintiff has not heard back from the others. Dkt. No. 5 at 2. Given that, the court next must consider whether the difficulty of the case at this stage of the litigation exceeds the plaintiff's capacity to handle it.

At this point, the plaintiff has filed an organized, focused, and sufficiently detailed complaint. Once defendant Murphy files an answer, the plaintiff will be able to serve discovery questions on defendant Murphy, both to find out the identities of the other defendants and to obtain more information about the facts surrounding his case. Based on what the plaintiff has filed so far (a clear, easy-to-understand complaint, a motion to proceed without paying the filing fee, and a motion for appointment of counsel), the court believes that the plaintiff is capable of representing himself through the discovery proceedings.

If the plaintiff's health issues continue to worsen and he is physically unable to handle these tasks, he should renew his request that the court

8

recruit counsel to represent him, and the court will determine whether it needs to reconsider its decision.

## IV. CONCLUSION

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 3). The court also **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel (Dkt. No. 5).

The court **ORDERS** that the plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Patrick Murphy and the John/Jane Doe(s).

The court **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Murphy.

The court **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Murphy shall file a responsive pleading to the complaint within **sixty (60) days** of receiving electronic notice of this order.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

9

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The court further advises the plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 13th day of June, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge

10

Case 2:16-cv-00612-DEJ   Filed 06/13/16   Page 10 of 10   Document 10